John H. COX, Appellant,

v.

KEYSTONE CARBON COMPANY, Richard Reuscher and William Reuscher.

No. 88–3163.

United States Court of Appeals,
Third Circuit.

Argued July 27, 1988.

Decided Nov. 9, 1988.

Joseph E. Altomare (argued), Altomare and Bernhart, Titusville, Pa., for appellant.

Gary H. McQuone (argued), David B. Fawcett, III, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for appellees.

Before GIBBONS, Chief Judge, and SEITZ and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

John H. Cox ("Cox" or "plaintiff") appeals from a final judgment of the district court dismissing his ERISA and state law claims. We have jurisdiction under 28 U.S.C. § 1291.

### I. BACKGROUND

On November 5, 1979, Cox was hired by Keystone Carbon Company ("Keystone") to serve as its corporate controller at a starting salary of $40,000 per year. On March

28, 1983, after experiencing chest pains and undergoing a stress test, Cox was diagnosed as suffering from severe coronary artery disease. He thereafter commenced a leave of absence to have triple bypass surgery.

On June 28, 1983, Cox returned to work on a part-time trial basis. On that day, Cox was discharged by Richard Reuscher, Keystone's President.[1] After his termination, Cox applied for long term disability and medical insurance benefits.[2] Keystone opposed Cox's application for these benefits. Ultimately, Cox was denied medical insurance but was granted disability benefits.

On June 21, 1985, Cox filed a five count complaint against Keystone, Richard Reuscher and William Reuscher.[3] Thereafter, the district court dismissed three counts, leaving Keystone as the only defendant and leaving only Counts I and III for trial. Those are the only counts involved in the appeal. Count I alleged that Keystone, in violation of § 510 of ERISA, discharged Cox for the purpose of interfering with Cox's attainment of certain employee benefits. Count III alleged that the reason for and the manner of discharging Cox was intentional, malicious, wanton, extreme and so outrageous as to constitute intentional infliction of emotional distress under Pennsylvania law.

Prior to the trial on the merits, Keystone moved to strike Cox's demand for a jury trial as to the ERISA claim. The district court permitted the ERISA claim to be tried to a jury but limited the jury determination to liability and special damages. Special damages were defined as lost pay from the date of discharge to the date of judgment and out-of-pocket medical expenses incurred to the date of judgment. The district court reserved to itself the prerogative to assess general damages, defined as diminished earning capacity and pain and suffering, and to reinstate pension, medical and life insurance benefits.

At the close of plaintiff's evidence in the jury trial, the court granted Keystone's motion for a directed verdict on plaintiff's claim based on intentional infliction of emotional distress. Thereafter, the jury returned a verdict of $250,000 in favor of Cox on his ERISA claim. The court, however, denied Cox general damages and refused to reinstate his pension, medical or life insurance benefits.

Both parties filed post-trial motions. Cox filed a motion under Rule 52(b) of the Federal Rules of Civil Procedure seeking additional findings and an amendment to the judgment. Keystone filed a motion for a new trial and in the alternative for a judgment notwithstanding the verdict. The district court ruled that it erred in granting Cox a jury trial on the ERISA claim. It therefore vacated the jury verdict and granted Keystone's motion for a new trial. All other post-trial motions were declared moot.

The parties subsequently filed a stipulation waiving their right to further evidentiary proceedings and submitted the evidence from the jury trial as the record for the determination of the ERISA claim by the district court. Thereafter the district court entered judgment in favor of Keystone on the ERISA claim and this appeal followed. We first address plaintiff's ERISA claim.

## II. THE STATUTORY SCHEME

Plaintiff brought his suit under § 510 of ERISA which provides in pertinent part:

It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter or the Welfare and Pension Plans Disclosure Act

---

**1.** At the time of Cox's dismissal, Richard Reuscher was Secretary–Treasurer of Keystone.

**2.** The medical and disability insurance was purchased by Keystone from a private insurance carrier. Cox applied to this third-party insurance carrier for his medical and disability benefits.

**3.** William Reuscher is the vice president of Keystone.

... The provisions of § 1132 of this title shall be applicable in the enforcement of this section.

Congress enacted § 510 to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining rights to which they had become entitled under their benefits plan or under ERISA. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.) *cert. denied* — U.S. ——, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987).

To enforce the prohibitions of § 510, Congress made the civil enforcement scheme of section 502, 29 U.S.C. § 1132, applicable. Under subsection (a)(1)(B) a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights for future benefits under the terms of the plan." Under subsection (a)(3) a civil action may be brought "by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other equitable relief."

## III. RIGHT TO A JURY TRIAL UNDER ERISA

Appellant contends that the district court erred in finding that Cox was not entitled to a jury trial on his ERISA claim and granting Keystone's post-trial motion for a bench trial. First, Cox contends that § 510 created a legal right to recovery, and that once Congress created a private right of action to enforce this legal right then the seventh amendment to the Constitution commands that a jury trial must be afforded to any party seeking to recover for a violation of § 510.

■■ Cox's analysis is flawed. In determining a party's right to a jury trial it is the procedural and remedial sections of the statute creating the right which must be examined. *See Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987); *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). Where the particular remedial section in the statute provides for only equitable remedies then no right to a jury trial exists. *Lincoln v. Board of Regents of University System of Georgia*, 697 F.2d 928, 934 (11th Cir.) *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983) *citing Lehman v. Nakshian*, 453 U.S. 156, 163–164, 101 S.Ct. 2698, 2702–2704, 69 L.Ed.2d 548 (1981). As one learned commentator has pointed out, within a particular statute a right to a jury might exist as to some of the enforcement sections and not as to others.[4] 5 J. Moore, Federal Practice § 38–11[7] (1988). Rather than examining whether § 510 afforded a legal right to relief, the applicable subsections of § 502, the civil enforcement provision, must be examined.

Second, Cox asserts that once Congress created a right pursuant to § 510, Congress was without power to restrict the remedies available to Cox. Instead, Cox claims, it is entirely up to the court to fashion appropriate remedies, including legal remedies which would entitle Cox to a jury trial.

This proposition is meritless. The Supreme Court explicitly rejected the notion that courts are free to create remedies outside the scope of the "six carefully integrated civil enforcement provisions found in § 502(a)" of ERISA. *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed. 2d 96 (1985). The Supreme Court noted: "Where a statute expressly provides a particular remedy or remedies, a court must be chary about reading others into it." *Id.* at 147, 105 S.Ct. at 3093 *citing Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62

---

**4.** Moore notes: "Under the [Price Control] Act, Congress provided an arsenal of civil remedies: (1) an action for damages for the aggrieved purchaser or tenant; (2) an action by the Administrator to enjoin continued violations and restitution of the overcharges to the purchaser or tenant, in the event he has not sued; and (3) an action by the United States to recover treble the amount of overcharge under certain circumstances. The second remedy is equitable and no right to a jury trial attaches. The first and third are legal and the right to a jury trial attaches, although the statute is silent on the matter." 5 J. Moore § 38–11[7] (1988).

L.Ed.2d 146 (1979). Thus, we are not free to create remedies under ERISA but must determine if the remedies which Congress created under § 502(a)(1)(B) and § 502(a)(3), the applicable remedial sections in this case, are of such a nature as to afford a right to a jury.

In analyzing Cox's entitlement to a jury trial under § 502(a)(1)(B) and § 502(a)(3), this court must first examine the language and the legislative history of ERISA to determine if Congress intended to create a right to a jury trial. *Lorillard v. Pons*, 434 U.S. at 584, 98 S.Ct. at 872. If the statutory analysis does not reveal a congressional intent to provide a jury trial, the seventh amendment to the United States Constitution must be examined to determine if it commands that a jury trial be provided. *See Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). We will deal with Cox's entitlement to a jury trial under each of the claimed subsections in turn.

## A. SECTION 502(a)(3)

The appropriate starting point for our analysis is with the language of ERISA.[5] "ERISA itself does not make any provision for a jury trial, and the sparse legislative history is not enlightening." *Turner v. CF & I Steel Corp.*, 770 F.2d 43, 46 (3d Cir.1985), *cert. denied* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). Thus, the language of subsection (a)(3), as the remedial provision here in question, must be examined in order to divine Congress' intent. *Covington v. International Rehabilitation Assoc.*, No. 86–3503 slip op. at 2 (E.D.Pa. October 16, 1986) [available on WESTLAW, 1986 WL 11703].

A close examination of the language of subsection (a)(3) reveals that it is meant to provide only equitable relief and as such Congress can be said to have intended that there be no right to a jury trial under subsection (a)(3). *See Great American Savings and Loan Assoc. v. Novotny*, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed. 2d 957 (1979). Subsection (a)(3) provides that a civil action may be brought "to enjoin any act or practice ... or to obtain *other equitable relief."* 29 U.S.C. § 1132(a)(3) (emphasis added). In using the words "equitable relief", we can infer that Congress knew the significance of the term equitable and intended that no jury be available on demand.[6] *Lorillard v. Pons*, 434 U.S. at 583, 98 S.Ct. at 871.

Our analysis does not end here; we must determine if the seventh amendment dictates that a jury trial be provided on demand. That amendment provides that, "[i]n Suits at common law, where the value in controversy exceed twenty dollars, the right to trial by jury shall be preserved." "The phrase 'common law', found in this clause, is used in contradistinction to equity and admiralty and maritime jurisprudence...." *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446–447, 7 L.Ed. 732 (1830). As the Supreme Court noted in *Curtis v. Loether*, 415 U.S. at 194, 94 S.Ct. at 1008: "The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." Thus, where, as is the case under subsection (a)(3), the remedy is explicitly equitable, then there is no seventh amendment right to a jury. *Curtis v. Loether*, 415 U.S. at 194–195, 94 S.Ct.

---

**5.** As the Supreme Court has noted: "It is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided." *Lorillard v. Pons*, 434 U.S. at 575, 98 S.Ct. at 866 (quoting *United States v. Thirty-seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971)).

**6.** Appellant, at oral argument, drew this Court's attention to the Seventh Circuit case of *Bugher v. Feightner*, 722 F.2d 1356 (1983), *cert. denied* 469 U.S. 822, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984).

Although the Seventh Circuit in *Bugher* determined that the plaintiff was entitled to a jury, the Court was confronted with a different situation than the one at hand. In that case, the plaintiff was seeking relief under both § 502(a)(3) of ERISA and § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185(a). The court noted that if § 502(a)(3) were the only grounds for the suit "we would have no difficulty in holding that there is no right to a jury trial in this case." *Bugher*, therefore, does not effect this court's disposition of this case.

at 1008–1009. *See Tull v. United States,* 481 U.S. at 420–421, 107 S.Ct. at 1837.

**B. Section 502(a)(1)(B)**

 Even though Cox is not entitled to a jury trial under § 502(a)(3), our analysis is not over because he may still be entitled to a jury trial if his claim for relief under § 502(a)(1)(B) is legal in nature. From the record before us, we cannot find that the district court addressed plaintiff's right to relief under this subsection or his right to a jury thereunder. From our examination of post-argument submissions to us, it would appear that plaintiff relied on § 502(a)(1)(B) in the district court, although Keystone seems to argue to the contrary. Furthermore, Keystone did not address this issue in its brief filed in this court.

Under the foregoing circumstances, we must consider whether we should remand this portion of plaintiff's claim to afford the district court the first opportunity to resolve it. It is established law in this circuit that the substance of the pleadings must be examined to determine if the issues raised are triable to a jury. *Laskaris v. Thornburgh,* 733 F.2d 260, 264 (3d Cir.), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). As this court previously recognized "[t]he difference between actions brought under subsections (a)(1)(B) and (a)(3) of ERISA is often difficult to discern in situations such as this one where the complaint is unspecific." *Livolsi v. Ram Construction Co.,* 728 F.2d 600, 602 (3d Cir.1984). Since Cox's complaint did not specify under which subsection of § 502 of ERISA his action was brought, it seems appropriate for the district court to first determine whether the § 502(a)(1)(B) claim was presented to it and if so, whether he was entitled to a jury trial thereunder.

**IV. THE MERITS OF COX'S ERISA CLAIM**

Cox contends that even if we find that he was not entitled to a jury trial, the district court's judgment in favor of Keystone should be overturned. Given our resolution of Cox's right to a jury trial, this question is not now properly before this court. On remand, the district court must determine if Cox is entitled to relief pursuant to § 502(a)(1)(B), and if so, whether or not Cox is entitled to a jury trial on this claim. Should the district court conclude that Cox is both entitled to relief under § 502(a)(1)(B) and to a jury trial on this claim, then the jury would decide all questions of fact pertaining to Cox's legal claim under § 502(a)(1)(B) as well as any issues of fact common to both § 502(a)(1)(B) and § 502(a)(3). *Curtis v. Loether,* 415 U.S. at 196 n. 11, 94 S.Ct. at 1009 n. 11; *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 470–473, 82 S.Ct. 894, 896–897, 8 L.Ed.2d 44 (1962). It has been stated that "[w]hen a party has a right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim." *Lincoln v. Board of Regents of the University System of Georgia,* 697 F.2d at 934. Thus, it is inappropriate at this time to examine the findings of fact by the district court because we are unable to tell whether the district court will reach any or all of the factual issues in dispute in this case.

**V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

 Cox next contends that it was error for the district judge to direct a verdict in favor of Keystone on Cox's claim for intentional infliction of emotional distress. Cox argues that there was sufficient evidence in the record to support a prima facie case and that the claim should therefore have been submitted to the jury. His claim for intentional infliction of emotional distress is a state tort claim and the substantive law of Pennsylvania governs. In a case such as this, where there is an appeal from a directed verdict for the defendant, "we must examine the record in the light most favorable to the plaintiff [Appellant] ... [and] determine whether, as a matter of law, the record is critically deficient of the minimum quantum of evidence from which a jury might reasonably afford relief." *Denneny v. Siegel,* 407 F.2d 433, 439 (3d Cir.1969).

The gravamen of the tort of intentional infliction of emotional distress is that the conduct complained of must be of an "extreme or outrageous type." *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, at 494, 539 A.2d 1298, at 1305 (1988). As a preliminary matter, it is for the court to determine if the defendant's conduct is so extreme as to permit recovery. *Krushinski v. Roadway Express,* 627 F.Supp. 934, 938 (M.D.Pa.1985) (citing Restatement (Second) of Torts § 46 comment h).[7] Pennsylvania courts have been chary to declare conduct "outrageous" so as to permit recovery for intentional infliction of emotional distress and have allowed recovery "only in limited circumstances where the conduct has been clearly outrageous." *Krushinski v. Roadway Express,* 627 F.Supp. at 938. It has been said that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[8] *Buczek v. First National Bank of Mifflintown,* 366 Pa.Super. 551, at 558, 531 A.2d 1122, at 1125.

We must view the evidence in the light most favorable to Cox to determine if Keystone's conduct can be termed outrageous. We may therefore accept as true Cox's characterization of the evidence for the limited purpose of ruling on the propriety of the directed verdict. Keystone fired Cox on his first day back to work. Keystone knew that Cox had undergone triple bypass surgery, and was returning to work on a trial basis and that accordingly his physical and emotional recuperation were not complete when Keystone fired him. Keystone may be said to have known that by firing Cox, it was endangering his chances of collecting medical and disability benefits. Keystone may also be said to have known that by firing Cox it was depriving him of a valuable therapeutic tool and jeopardizing his chances to obtain alternate employment.

At the outset, it must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress. *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. at 494, 539 A.2d at 1305. In the context of a dismissal, it has been noted that "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event" and cannot provide a basis for recovery for intentional infliction of emotional distress. *Brieck v. Harbison–Walker Refractories,* 624 F.Supp. 363, 367 (W.D. Pa.1985), *aff'd. in relevant part* 822 F.2d 52 (3d Cir.1987). Moreover, courts applying Pennsylvania law have failed to find conduct outrageous where an employer deceived an employee into foregoing other employment, *Cautilli v. GAF Corp.,* 531 F.Supp. 71, 74 (E.D.Pa.1982), or even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult. *Madreperla v. Williard Co.,* 606 F.Supp. 874, 880 (E.D.Pa.1985).

Indeed, the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee. *See, e.g., Bowersox v. P.H. Glatfelter Co.,*

---

**7.** Comment h to the Restatement (Second) of Torts states in pertinent part: "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."

**8.** Cox likens this standard to the conduct required for an award of punitive damages. This analogy is faulty and has been explicitly rejected by the Pennsylvania courts. One court, quoting comment d of section 46 to the Restatement Second of Torts, noted: "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Daughen v. Fox,* 372 Pa.Super. 405, 412, 539 A.2d 858, 861 (1988).

677 F.Supp. 307, 311 (M.D.Pa.1988).[9] In *Bowersox* the plaintiff alleged that her employer not only sexually harassed her but withheld information from her which she needed to perform her job, forbade her from talking to anyone in her office, prohibited her from answering the phone, refused to talk to her and followed her throughout the plant. *Id.*

In the instant case, examining Cox's claim in the light most favorable to him, Keystone can only be said to have dismissed Cox with an improper motive and notwithstanding the potential effects on Cox. Keystone's actions, examined with Pennsylvania precedent as the relevant backdrop, do not appear to rise to the level of outrageousness which is required under Pennsylvania law. Thus, although we agree with the district court that Cox's dismissal could have been handled with more empathy and finesse, we must nevertheless conclude that Keystone's behavior was not so outrageous as to allow a reasonable jury to afford Cox relief on his intentional infliction of emotional distress claim. Thus, the district court properly directed a verdict in favor of Keystone on Cox's emotional distress claim.

## VI. CONCLUSION

For the foregoing reasons we will affirm the district court's order denying Cox a jury trial on his claim under § 502(a)(3) of ERISA. We will also affirm the district court's order directing a verdict in favor of Keystone on Cox's intentional infliction of emotional distress claim.

We will remand this case to the district court for further consideration of Cox's entitlement to relief and to a jury trial pursuant to § 502(a)(1)(B) of ERISA and for such other proceedings as may be necessary and consistent with this opinion.

---

**9.** In *Bowersox,* the court noted: "If the only allegations supporting Joanne Bowersox's claim for intentional infliction of emotional distress were those concerning Young's sexual harassment of her, the court would be forced to conclude that Count Three [the intentional infliction of emotional distress claim] failed to state a claim upon which relief could be granted." *Bowersox v. P.H. Glatfelter Co.,* 677 F.Supp. at 311.