Priscilla **KELSEY–ANDREWS** and
Debra Ann Conn

v.

**CITY OF PHILADELPHIA, et al.**

Civ. A. No. 88–4101.

United States District Court,
E.D. Pennsylvania.

Feb. 16, 1989.

Joyce S. Mozenter, Mozenter, Molloy & Durst, Pamela Pryor Cohen, Philadelphia, Pa., for plaintiffs.

Richard G. Freeman, Chief Ass't City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

Plaintiffs filed this action alleging sexual harassment against their employer and various supervisors in the Philadelphia Police Department in violation of Title VII, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1983, and the common law. The § 1983 equal protection claim and the common law claim of intentional infliction of emotional distress were tried to a jury, and the Title VII claim was tried to the bench. After a trial lasting from December 6 to December 19, 1988, the jury returned verdicts in favor of the plaintiffs on their § 1983 and state law claim.[1] As to the Title VII claim, the court found in favor of the defendants and against the plaintiffs. *See* Findings of Fact and Conclusions of Law filed December 19, 1988.

Presently before the court are numerous motions of the parties. Plaintiffs have moved to amend the court's judgment on the Title VII claim pursuant to Fed.R. Civ.P. 59(e) and have applied for attorneys' fees pursuant to 42 U.S.C. § 1988. Defendants, on the other hand, have moved for judgment notwithstanding the verdict pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, amendment of judgment pursuant to Fed.R.Civ.P. 59, and remittitur pursuant to Fed.R.Civ.P. 59.

## I. *Background*

A brief description of the parties involved in this action will be helpful. Plaintiff Priscilla Kelsey–Andrews (Kelsey–Andrews) is a thirty year old black female hired by the Philadelphia Police Department in February 1982. In February 1986, she was transferred to the Accident Investigation Division (AID) of the police department. Consisting of approximately fifty officers, AID is responsible for investigating and completing reports on accidents occurring in the city. Kelsey–Andrews' immediate supervisor was defendant Sergeant Frank Doyle, a white male, and as of June 1986 her commanding officer was defendant Captain Joseph Liciardello, also a white male.

Plaintiff Debra Conn (Conn) is a thirty-five year old white female hired by the police department in August 1977. Conn transferred into AID in May 1986. As of June 1986, her commanding officer was Captain Joseph Liciardello.

Kelsey–Andrews and Conn brought suit in May 1988 against Liciardello, Doyle, the Mayor of Philadelphia, the Personnel Director of the City of Philadelphia, then-Police Commissioner Kevin Tucker, and various unnamed "John Doe" police officers. The suit sought redress for alleged sexual harassment and discrimination suffered by the plaintiffs while assigned to AID. Incidents directed at Kelsey–Andrews were alleged to have occurred primarily during the period August 1986 to August 1987; incidents directed at Conn were alleged to have occurred primarily during the period February 1987 to August 1987.

Prior to the start of trial, the court granted the summary judgment motion of the Mayor as against the plaintiffs. *See* Order filed Dec. 6, 1988. Upon defendants' motion for a directed verdict at the close of plaintiffs' evidence, the court granted the motion as to Kelsey–Andrews' Title VII claim of a *racially* hostile environment and also granted the motion as to plaintiffs' claims against the Personnel Director and the unnamed police officers. N.T. VI (afternoon) at 2–6. Thus, the case went to the

---

**1.** See Appendix for a summary of the jury's answers to interrogatories and verdicts.

jury with the City, Police Commissioner Tucker, Liciardello, and Doyle as defendants.

## II. *Judgment Notwithstanding the Verdict*

On a motion for judgment notwithstanding the verdict, the court must examine the record in the light most favorable to the plaintiff. *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir.1987). The court must determine whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief. *Id.* In considering the motion, the court must give the plaintiff the benefit of all reasonable inferences capable of being drawn from the evidence. *Blair v. Manhattan Life Insur. Co.*, 692 F.2d 296, 300 (3d Cir.1982). The court is not free to weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. *Id.*

## III. *Claims under 42 U.S.C. § 1983*

On the claims brought under 42 U.S.C. § 1983, the jury returned verdicts for Kelsey–Andrews against defendants City of Philadelphia, Liciardello, and Doyle, and for Conn against defendants City and Liciardello.

### A. *Municipal Liability—Defendant City of Philadelphia*

Both plaintiffs claimed that their employer, the City of Philadelphia, violated their rights to equal protection under § 1983. The basis asserted by plaintiffs for municipal liability was that "an unwritten policy of sex discrimination exists within the Philadelphia Police Department" and that Police Department and City supervisory personnel failed to take "effective action" in response to plaintiffs' complaints of sexual harassment. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 15; Plaintiffs' Answer to Defendants' Motion for Judg-

ment N.O.V. at 8–9. The jury returned verdicts against the City and in favor of both plaintiffs on their 1983 claims.[2]

The Supreme Court's most recent pronouncement on the parameters of municipal liability is *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). In that case, the court reiterated several guiding principles of municipal liability under § 1983 as set forth in *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986):

> First, ... municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered.
>
> Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability.
>
> Third, whether a particular official has "final policymaking authority" is a question of state law.
>
> Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.

*Praprotnik*, 485 U.S. at ——, 108 S.Ct. at 924, 99 L.Ed.2d at 118.

■ It is well established that a municipality cannot be held liable under § 1983 for its employees' actions solely on the basis of respondeat superior. *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 (3d Cir.1988) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978)). *Praprotnik* makes clear that a municipality cannot be held liable under § 1983 unless the existence of an unconstitutional policy is shown. *Praprotnik*, 485 U.S. at ——, 108 S.Ct. at 926, 99 L.Ed.2d at 121. Even in the absence of formal policymaking activity, however, an official "policy" may be inferred from informal acts or omissions of supervisory municipal officials, although not from the misconduct of a single low-level officer. *Colburn*, 838

---

**2.** The instruction given to the jury on municipal liability under § 1983 appears at N.T. VIII (afternoon) 111–13.

F.2d at 671 (citations omitted). Finally, "the mere failure of a supervising policymaker to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale." *Praprotnik*, 485 U.S. at ——, 108 S.Ct. at 927, 99 L.Ed.2d at 122.

■ To prevail on their equal protection claim against the City, then, plaintiffs must have proved: (1) that it was the policy or custom of the Police Department to discriminate against female police officers and or to fail to take appropriate action when complaints of sexual discrimination or harassment were made by female police officers; (2) that discrimination against female police officers was a motivating factor; and (3) that plaintiffs were injured by the policy or custom. *Cf. Hynson v. City of Chester*, 864 F.2d 1026, 1032 (3d Cir.1988).

Both plaintiffs initially registered complaints of sex discrimination with the Police Department's Equal Employment Unit in July 1987. Plaintiffs' Exhibits 51–52. Shortly thereafter in August 1987, both plaintiffs registered their complaints with the Police Department's Internal Affairs Division (IAD).

IAD's investigation relating to plaintiffs' complaints lasted approximately two months and the final reports to the Police Commissioner consisted of several hundred pages. N.T. VII (afternoon) at 92–95. The investigations included, inter alia, interviewing AID personnel, reviewing personnel records, and reviewing various police duty logs, reports, and assignment sheets and statistics. N.T. VII (afternoon) at 52–53.

Upon completion, the reports were submitted to defendant Police Commissioner Tucker. In sum, Tucker found the report to be thorough and comprehensive, yet inconclusive. N.T. VII (afternoon) at 13. Specifically, Tucker stated that he "could not make a judgment, based on the information [he] had, in terms of responsibility [for the incidents involving Kelsey–Andrews and Conn at AID]." *Id.* Tucker testified that after receiving the report, he later assigned two female officers to AID as a warning or signal that women were going to be assigned throughout the department. *Id.* at 19–21.

■ In determining whether the verdict against the City may stand, the court first notes that plaintiffs' constitutional rights were not violated simply because the results of IAD's investigation were inconclusive or not to their liking. *See Poe v. Haydon*, 853 F.2d 418, 427–28 (6th Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989) (state employee did not have constitutional right to a specific outcome following investigation of her complaint of sexual harassment).

Second, relevant precedent makes clear that only the actions of a municipal officer with final policymaking authority may subject the City to liability under § 1983. As a police captain and sergeant, respectively, neither Liciardello nor Doyle could be considered policymakers in the Philadelphia Police Department; it appears that only the Police Commissioner could, by his acts or omissions, subject the City to § 1983 liability under relevant Supreme Court precedents. In this regard, the evidence indicated that Commissioner Tucker and his predecessor, as policymakers for the police department, issued training bulletins to all Philadelphia police officers containing information regarding sex discrimination and harassment and providing for the filing of complaints. N.T. VI (afternoon) at 13–15. Furthermore, Tucker reviewed the IAD investigatory reports and made final decisions with regard to their findings. Finally, the jury found in favor of Tucker and against plaintiffs on their § 1983 claims against him; this fact alone strongly suggests the absence of liability on the part of the City.

Third, even assuming arguendo that Liciardello and Doyle purposely discriminated against Kelsey–Andrews and Conn, or failed to take appropriate action on their complaints of harassment or discrimination, and further assuming that Tucker failed to investigate the basis of his subordinates'

discretionary decisions, such failure would not amount to a delegation of policymaking authority, especially where the wrongfulness of the subordinates' decision might arise from a retaliatory motive or other unstated rationale. *Praprotnik*, 485 U.S. at ——, 108 S.Ct. at 927, 99 L.Ed.2d at 122. And, of course, the City cannot be held liable merely because it employed Tucker, Liciardello and Doyle. *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 (3d Cir.1988) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978)).

In sum, the court finds the record critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief to plaintiffs on their § 1983 claim against the City of Philadelphia. As a matter of law, the court finds that no reasonable jury could conclude that it was the policy or custom of the Police Department to discriminate against female police officers or to fail to take appropriate action when complaints of sexual discrimination or harassment were made by female police officers. Similarly, the jury concluded that Police Commissioner Tucker did not violate either plaintiffs' constitutional rights. Absent proof of a policy or custom, the verdict against the City under § 1983 cannot stand. Accordingly, judgment notwithstanding the verdict will be granted for the City on the § 1983 claims.

### B. *Individual Liability*

#### 1. *Qualified Immunity*

In support of their motion for judgment notwithstanding the verdict, defendants' argue that Liciardello and Doyle are entitled to qualified immunity as police supervisors. Some of the defendants previously raised this defense in a motion for summary judgment,[3] which was denied by the court. *See* Order filed Dec. 6, 1988. Defendants took an interlocutory appeal on the first day of trial to that portion of the court's order denying the existence of qualified immunity, *see* Notice of Appeal filed

Dec. 6, 1988, which appeal was later dismissed by the Court of Appeals pursuant to Fed.R.App.P. 42(b) on Dec. 27, 1988.

As the Third Circuit recently stated, "The defense of qualified immunity for government officials represents a compromise between the conflicting concerns of permitting the recovery of damages for vindication of constitutional rights caused by the abuse of public office and permitting government officers to perform discretionary functions without fear of harassing litigation." *Hynson v. City of Chester*, 864 F.2d 1026, 1031–32 (3d Cir.1988). The Supreme Court has noted that:

By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken with independence and without fear of consequences.

*Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

As explained by the Third Circuit, a right is not clearly established unless it has been recognized in similar or analogous circumstances, *Hynson v. City of Chester*, 864 F.2d 1026, 1032 (3d Cir.1988); *Ryan v. Burlington County*, 860 F.2d 1199, 1208 (3d Cir.1988), and "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the law." *Hynson*, at 1032 (quoting *Anderson v. Creigh-*

---

**3.** Defendants Mayor Goode, Police Commissioner Tucker, and Personnel Director Jones raised the qualified immunity defense in defendants' motion for summary judgment. Defendants'

Motion for Summary Judgment at 36–37. The defense was not raised by defendants Liciardello or Doyle at that time.

*ton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). This standard requires " 'some but not precise factual correspondence' between relevant precedents and the conduct at issue." *Ryan,* 860 F.2d at 1208 (quoting *People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 144 (3d Cir.1984)).

In the instant action, plaintiffs charged that the defendants violated plaintiffs' rights to equal protection under the fifth and fourteenth amendments to the Constitution. Complaint, ¶ 61.

 In their post-trial motion,[4] defendants Liciardello and Doyle do not contend that plaintiffs' right to equal protection is not clearly established, but rather they argue that it is unclear "how a similarly situated police supervisor can deny equal protection through his supervision of women...." Defendants' Supplemental Memorandum in Support of Judgment N.O.V. at 2. The court interprets defendants' argument to mean that there is insufficient "factual correspondence" between relevant precedents and the specific supervisory conduct at issue in this case.

Recent decisions of the Third Circuit make clear that plaintiffs' equal protection claim may not be addressed in a broad sense, but rather the examination must focus on, in this case, a female police officer's right to be treated in a sexually nondiscriminatory manner by her superior officers in her employment. *Cf. Hynson v. City of Chester,* 864 F.2d 1026, 1032 (3d Cir.1988); *Ryan v. Burlington County,* 860 F.2d 1199 (3d Cir.1988). While this statement accurately describes the factual situation in instant litigation, I note that the qualified immunity standard requires *"some but not precise* factual correspondence between relevant precedents and the conduct at issue." *Ryan,* 860 F.2d at 1208 (emphasis added).

The Eighth Circuit denied a claim of qualified immunity proffered as a defense to sex discrimination charges against a judge in *Goodwin v. Circuit Court of St. Louis County,* 729 F.2d 541 (8th Cir.1984). Although that case was decided before *Anderson,* the court determined that under the standard announced in *Harlow,* "[t]he right to be free of invidious discrimination on the basis of sex certainly is clearly established." *Id.* at 545–46. *See also Fuchilla v. Prockop,* 682 F.Supp. 247, 254–55 (D.N.J.1987) (public official not entitled to qualified immunity for alleged acts of sexual harassment occurring in 1983; contours of the law of § 1983 sexual harassment were clearly established at the time, citing cases). In numerous other cases, courts have concluded that disparate treatment of female employees solely because of their sex constitutes a violation of the equal protection clause. *See, e.g., Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271–72, 60 L.Ed.2d 846 (1979) (equal protection clause confers a federal constitutional right to be free from gender discrimination which does not serve important governmental objectives and is not substantially related to the achievement of those objectives); *Bohen v. City of East Chicago,* 799 F.2d 1180, 1185–88 (7th Cir.1986) (sexual harassment directed at female employee by male employees and supervisor solely because she is a woman is a violation of the equal protection clause, citing cases); *Gobla v. Crestwood School Dist.,* 609 F.Supp. 972, 978–79 (M.D.Pa.1985) (claim of sex discrimination against supervisory personnel stated claim under the equal protection clause); *Skadegaard v. Farrell,* 578 F.Supp. 1209 (D.N.J.1984) (allegations that female employee's supervisor failed to treat her as he treated similarly situated male employees stated a claim for relief under the equal protection clause).

Although the aforementioned cases do not deal specifically with a female police officer's right to be treated in a sexually nondiscriminatory manner by her superior officers with regard to her employment, the court finds that there is ample factual correspondence between these relevant precedents and the conduct challenged in

---

**4.** The issue of qualified immunity may be raised in a post-trial motion. *See Alvarado v. Picur,* 859 F.2d 448, 451 (7th Cir.1988) (qualified im-munity may be raised at any stage in litigation, including post-trial motion).

the instant litigation to make it sufficiently clear that a reasonable police supervisor, during the time period relevant to the instant litigation, should have known that treating female police officers differently than similarly situated male police officers solely because they are women violated clearly established law. Accordingly, Liciardello and Doyle's claims of qualified immunity will again be denied.

### 2. § 1983 Claims Against Defendants Liciardello and Doyle

The jury returned verdicts against Liciardello and Doyle in favor of both plaintiffs on their section 1983 claims.[5]

 Under section 1983, plaintiffs claiming a violation of their right to equal protection must prove the existence of "purposeful discrimination." *Batson v. Kentucky*, 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986). Such a claim arises when a woman contends that she is receiving different treatment than that received by men who are similarly situated solely because of her sex. *Bohen v. City of East Chicago*, 799 F.2d 1180, 1186–87 (7th Cir.1986); *Fuchilla v. Prockop*, 682 F.Supp. 247, 262 (D.N.J.1987). Once the plaintiff makes out a prima facie case of purposeful discrimination, the burden shifts to the defendant to explain adequately the reasons for the actions taken. *Id.* 476 U.S. at 94, 106 S.Ct at 1721. A single act or incident of discrimination can amount to intentional discrimination for equal protection purposes. *Id.* at 95, 106 S.Ct. at 1722.

 With regard to supervisory liability, the Supreme Court has held that supervisory officials do not violate the constitutional rights of victims unless they have played an "affirmative part" in the misconduct. *Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). Although the Third Circuit initially was unwilling to infer supervisory approval of unconstitutional conduct from inaction on the part of a supervisor, *see Chinchello v. Fenton*, 805 F.2d 126, 132–34 (3d Cir.1986), it

later modified that position in *Colburn v. Upper Darby Twp.*, 838 F.2d 663 (3d Cir. 1988). In *Colburn*, the Third Circuit indicated that liability as a result of supervisory inaction could be imposed when there is: (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents; and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate. *Id.* at 673 (citing *Chinchello*); *see also Freedman v. City of Allentown*, 853 F.2d 1111, 1116–17 (3d Cir.1988).

The court's conclusion with regard to plaintiffs' equal protection claims against Liciardello and Doyle is readily discernible from those Findings of Fact relevant to the § 1983 claim. *See* Findings of Fact and Conclusions of Law filed December 19, 1988. That the court and the jury disagree is of no consequence, however, because based on a review of the record and the evidence taken as a whole, viewed in the light most favorable to plaintiffs and giving them the benefit of all reasonable inferences capable of being drawn from the evidence, the court is unable to conclude that the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief on the § 1983 claims against Liciardello and Doyle.

### IV. *Plaintiffs' Motion to Alter or Amend Judgment on Title VII*

Plaintiffs' Title VII action alleged that they were subjected to "discriminatory treatment in the terms, conditions, and privileges of their employment on the basis of their sex." Complaint, ¶ 55. As developed at trial, plaintiffs sought to establish a violation of Title VII by proving that discrimination based on sex had created a hostile or abusive work environment at AID. N.T. I at 35; Plaintiffs' Answer to Defendants' Motion for Judgment N.O.V. at 8; *see also Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

---

**5.** The instructions given to the jury on the equal protection claim and supervisory liability under

§ 1983 appears at N.T. VIII (afternoon) at 109–15.

The Supreme Court has held that harassment on the basis of sex is a violation of Title VII when conduct of a sexual nature has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment. *Vinson,* 477 U.S. at 65, 106 S.Ct. at 2405. For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Vinson,* 477 U.S. at 67, 106 S.Ct. at 2406.

Immediately after the jury rendered its verdict, the court issued its Findings of Fact and Conclusions of Law made in accordance with Fed.R.Civ.P. 52(a). Based on its findings and the totality of the circumstances, the court concluded that plaintiffs failed to prove the existence of a sexually hostile work environment at AID and failed to prove respondeat superior liability by proving that the City of Philadelphia, through its agents or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action. Findings of Fact and Conclusions of Law at 13–14.

Plaintiffs' now move the court to alter or amend its judgment on the Title VII claim so as to conform with the verdict of the jury on plaintiffs' § 1983 equal protection claim, citing *Roebuck v. Drexel,* 852 F.2d 715 (3d Cir.1988). In *Roebuck,* a black professor who was denied tenure sued the university for racial discrimination under Title VII and 42 U.S.C. § 1981. In the § 1981 suit the jury found for Roebuck, but the district court found for the university on the Title VII claim. On post-trial motions, the district court denied Roebuck's motion to alter or amend the Title VII judgment to conform with the jury's findings on the § 1981 claim.

On appeal, the Third Circuit held that principles of collateral estoppel and jury supremacy preclude a district court from issuing a judgment in a Title VII case at variance with the jury's findings on a § 1981 claim. *Roebuck,* 852 F.2d at 737

(citing cases). While noting that a district court might be required to enter findings at variance with those of a jury, the court stated:

> [W]e think it apparent that the issue of intentional race discrimination is "common to both [the Title VII and § 1981] claims," and hence must be decided by the jury for purposes of *both* claims. Thus, because the elements of proof are identical in § 1981 and Title VII claims, *see Lewis v. University of Pittsburgh,* 725 F.2d 910, 915 n. 5 [3d Cir.1983], we hold that a trial court is bound in a Title VII case to conform its verdict to the findings of the jury in a concurrently tried § 1981 case.

*Roebuck,* 852 F.2d at 738 (emphasis in original). *See also Ward v. Texas Employment Comm'n,* 823 F.2d 907, 908–09 (5th Cir.1987) (trial court is bound by jury's findings on § 1983 sex discrimination claim as it affects determination of Title VII claim against same party); *Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1293–94 (7th Cir.1987) (jury verdict on § 1981 racial discrimination claim governs factual issues common to Title VII claim against employer); *Garza v. City of Omaha,* 814 F.2d 553, 557 (8th Cir.1987) (jury finding of municipal liability under § 1983 for discrimination based on national origin precluded district court from rendering an inconsistent judgment for municipality on Title VII claim); *Lincoln v. Board of Regents,* 697 F.2d 928, 934 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983) (trial court is bound by jury's findings on § 1983 sex discrimination claim as it affects determination of Title VII claim against same party). The court must now examine, then, whether the principles enunciated in *Roebuck* require amendment of its judgment on plaintiffs' Title VII claim.

As a result of the judgment notwithstanding the verdict to be entered for the City as set forth above, only the jury verdicts against Liciardello and Doyle remain on plaintiffs' § 1983 equal protection claims. In essence, then, the jury "found" that Liciardello and Doyle discriminated against Kelsey–Andrews and Conn because

of their sex, but that the City did not have a policy or custom of discriminating against female police officers or failing to take appropriate action when complaints of sexual discrimination or harassment were made by female police officers. Accordingly, the question before the court is whether the jury's § 1983 finding against Liciardello and Doyle binds the court in its determination of the Title VII claim against the City.

As noted above, plaintiffs Title VII claim was premised on the proving that discrimination or harassment based on sex had created a hostile or abusive work environment at AID. Under guidelines issued by the Equal Employment Opportunity Commission, sexual harassment is defined as follows:

> Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a) (footnote omitted). Although not binding upon courts, the EEOC guidelines have been accorded favorable consideration in addressing hostile work environment cases. *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 619 n. 4 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Thus, to show that the work environment at AID was "sexually hostile," plaintiffs must prove the existence of "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature."

Under the principles espoused in *Roebuck*, when the elements of proof are identical in § 1983 and Title VII claims, the district court is bound in the Title VII case to conform its verdict to the findings of the jury on issues that are common to both claims.

By virtue of its finding of § 1983 liability on the part of defendants Liciardello and Doyle, the jury "found" that Liciardello and Doyle intentionally or purposefully discriminated against Kelsey–Andrews and Conn by treating them differently than similarly situated male police officers solely because they were women. Plaintiffs Title VII claim, however, was premised on proving that discrimination or harassment based on sex had created a hostile or abusive work environment at AID. Thus, a finding that Liciardello and Doyle sexually discriminated against Kelsey–Andrews and Conn in violation of the equal protection clause does not, in and of itself, translate into a finding that AID was a sexually hostile working environment. *See Bohen v. City of East Chicago*, 799 F.2d 1180, 1187 (7th Cir.1986) (ultimate inquiry in claim for sexual harassment under the equal protection clause differs from inquiry under Title VII as to whether sexual harassment altered the conditions of the victim's employment so as to create an abusive working environment under *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

Even if the court were to alter its findings and assume certain conduct of Liciardello and Doyle contributed to a sexually hostile environment, such evidence is extremely minimal and would not, standing alone, support a finding of a sexually hostile work environment at AID.[6] Furthermore, to conclude that a § 1983 violation by

---

**6.** Examination of the record indicates that evidence of unwelcome sexual advances, requests for sexual favors, or verbal or physical conduct of a sexual nature on the part of defendants Liciardello or Doyle was minimal or nonexistent. Viewed in the light most favorable to plaintiffs, evidence of conduct on the part of Liciardello or Doyle that might be considered as contributing to a sexually hostile environment is limited to the following: Liciardello's comment

to Conn, "Don't you women know what you want? Why can't you stay in one unit?", N.T. IV at 120; and Doyle's breathing seductively around Kelsey–Andrews and his asking her how many boyfriends she had, N.T. I at 87. Beyond this, there was no evidence of any sexual advances, requests for sexual favors, or physical conduct of a sexual nature on the part of defendants Liciardello or Doyle directed towards Kelsey–Andrews or Conn.

Liciardello and Doyle requires the court to enter judgment against the City on the Title VII claim would improperly preclude consideration of the totality of the circumstances and whether the City took prompt and immediate corrective action. *Rabidue v. Osceola*, 805 F.2d 611, 621 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987) (promptness and adequacy of employer's response to correct instances of alleged sexual harassment is of significance in assessing a sexually hostile environment claim).

Because the elements of proof in plaintiffs' § 1983 equal protection claim and Title VII sexually hostile work environment claims are different, the court concludes that it need not alter or amend its judgment on plaintiffs' Title VII claim. *Cf. Roebuck.* As these causes of action are separate, distinct, and involve issues not common to both, different findings and ultimate conclusions are not inconsistent and thus need not be conformed to one another. Accordingly, plaintiffs' motion to alter or amend the Title VII judgment will be denied.

## V. *Common Law Claim—Intentional Infliction of Emotional Distress*

### A. *Existence of the Tort Under Pennsylvania Law*

Both plaintiffs asserted a claim for intentional infliction of emotional distress against defendants Liciardello and Doyle. The jury returned verdicts on these claims for Kelsey–Andrews against Liciardello and Doyle, and for Conn against Liciardello.[7]

Defendants contend initially that the tort of intentional infliction of emotional distress does not exist under Pennsylvania law. *See Ford v. Isdaner*, 374 Pa.Super. 40, 542 A.2d 137, 139 (1988) (citing *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987)).

In *Kazatsky*, the Pennsylvania Supreme Court did not explicitly adopt or reject the tort of intentional infliction of emotional distress. *Kazatsky*, 515 Pa. at ——, 527 A.2d at 988–89; *cf. id.* at ——, 527 A.2d at 995. In a concurring opinion, Justice Larsen stated his belief that the majority had "by implication" adopted the tort. *Id.* at ——, 527 A.2d at 995 (Larsen, J., concurring); *but see Ford*, 374 Pa.Super. at 44, 542 A.2d at 139 ("*Kazatsky* makes clear that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania").

In *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir.1988), the Third Circuit's discussion of the tort assumes the existence of the tort in Pennsylvania, though neither *Kazatsky* nor *Ford* are mentioned by the court. In a recent opinion that includes a discussion of *Kazatsky*, Judge Rambo of the Middle District of Pennsylvania concluded that the tort exists under Pennsylvania law. *See Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307 (M.D.Pa.1988); *see also Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa.Super. 83, 546 A.2d 1168 (1988); *Paul v. Lankenau Hosp.*, 375 Pa. Super. 1, 543 A.2d 1148 (1988); *Rinehimer v. Luzerne County Comm. Coll.*, 372 Pa. Super. 480, 539 A.2d 1298 (1988); *cf. Daughen v. Fox*, 372 Pa.Super. 405, 539 A.2d 858 (1988) (viability of the tort unclear; however, conduct alleged was not sufficiently outrageous to state cause of action); *but see Clemens v. Gerber Scientific Inc.*, No. 87–5949, 1989 WL 3480 (E.D.Pa. Jan. 13, 1989) (O'Neill, J.) (tort of intentional infliction of emotional distress does not exist in Pennsylvania); *Ford*, 374 Pa.Super. 40, 542 A.2d 137 (1988) (same). Based on the above, the court concludes that the tort of intentional infliction of emotional distress is recognized under Pennsylvania law, albeit under limited circumstances.

As noted by the Third Circuit in *Cox*, the gravamen of the tort is that "the conduct complained of must be of an 'extreme and outrageous type.'" *Cox*, 861 F.2d at 395 (quoting *Rinehimer v. Luzerne County Comm. Coll.*, 372 Pa.Super. 480, 494, 539

---

7. The instruction given to the jury on intentional infliction of emotional distress appears at

N.T. VIII at 115.

A.2d 1298, 1305 (1988)). "It has been said that 'the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Cox*, 861 F.2d at 395 (quoting *Buczek v. First National Bank of Mifflintown*, 366 Pa.Super. 551, 558, 531 A.2d 1122, 1125 (1987)).

The only instances in which courts have found conduct sufficiently outrageous in the employment context is when an employer engages in both sexual harassment and other retaliatory behavior against the employee. *Cox*, 861 F.2d at 395 (citing *Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307 (M.D.Pa.1988)). In *Bowersox*, the plaintiff alleged that her employer had not only sexually harassed her but had withheld information from her which she needed to perform her job, forbade her from talking to anyone in her office, prohibited her from answering the phone, refused to talk to her, and followed her throughout the workplace. Concluding that such extreme conduct could lead an average member of the community to exclaim, "Outrageous!," the court refused to dismiss the cause of action in *Bowersox*.

That the circumstances under which the tort will be recognized are limited is demonstrated by the dismissal of a claim for intentional infliction arising out of the employment context in *Aquino v. Sommer Maid Creamery, Inc.*, 657 F.Supp. 208 (E.D.Pa.1987) (Shapiro, J.). In *Aquino*, the plaintiff claimed that her work was checked more frequently than other employees' work; that a fellow employee followed her into the restroom, "banging on the door and asking what she was doing"; that the president of the company would sit and stare at her for ten minutes at a time; that she was called at home to demand that she report for work; and that she was berated for low work production. These activities, the court concluded, were "not so

outrageous in character and so extreme in degree as to be atrocious and utterly intolerable;" therefore, the court dismissed the intentional infliction claim. *Id.* at 211.

In approaching this issue, then, the court must consider whether a reasonable jury could conclude that the alleged conduct of Liciardello and Doyle towards the plaintiffs rose to the level of outrageousness required under Pennsylvania law.

### B. *Kelsey–Andrews*

 With regard to the intentional infliction claim, the evidence against Liciardello in the light most favorable to Kelsey–Andrews was as follows: he called her at home about six missing case files, later discovered by her to be in the trunk of her personal automobile, N.T. II at 9, IV at 55; he told her that he would charge her with misconduct for her failure to appear at a court hearing (without notifying the department) four days after the shirt incident[8] on August 20, 1987, N.T. II at 32; he told her she was paranoid and crazy after the shirt incident on August 20, 1987, N.T. II at 32–33; and he disciplined her for failing to answer her phone or doorbell during a work tour of duty when she had reported in sick and was being "sick-checked" by other officers, N.T. III at 40–43.

The evidence against Doyle, in the light most favorable to Kelsey–Andrews, was as follows: he spent a lot of time at her desk, standing over her and watching her and breathing, sometimes seductively, N.T. I at 66, II at 10, IV at 19, 30, 33; he asked her to redo accident reports that were missing, N.T. I at 75, or that contained inaccurate information, N.T. III at 52–72; he asked her how many boyfriends she had, N.T. I at 87; he assigned her to an accident investigation when she believed that it should have been assigned to another officer, N.T. I at 93; she gave him a note pad, along with other documents, and that when these

---

8. On August 20, 1987, Kelsey–Andrews put on her uniform shirt after taking it out of her locker at AID. Shortly thereafter, she complained to other officers of a burning sensation on her upper body. She was taken by other officers to a medical clinic for treatment and

was found to have sustained skin injuries. It was later determined that the material on the shirt was calcium oxide, otherwise known as "lime." Lime was also discovered on other shirts and a raincoat in her locker.

were returned to her, the note pad was missing, N.T. I at 95–96; he didn't investigate her complaints that her note pads were being taken, N.T. IV at 50; and he told her things about his personal life, N.T. IV at 18.

Having examined the record in the light most favorable to plaintiff Kelsey–Andrews, "with Pennsylvania precedent as the relevant backdrop," *Cox*, 861 F.2d at 396, the court finds as a matter of law that the actions of Liciardello and Doyle do not rise to the level of outrageousness required under Pennsylvania law. As was the case in *Cox*, the court finds that certain meetings or discussions between Kelsey–Andrews and her supervisors could have been handled with more empathy and finesse. Nevertheless, the court concludes that the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief to Kelsey–Andrews on her intentional infliction of emotional distress claims against Liciardello and Doyle.

### C. *Conn*

■ With regard to the intentional infliction claim, the evidence against Liciardello in the light most favorable to Conn was as follows: he became aggravated with and yelled at her when a case file she claimed had been taken from her desk or briefcase was found by another officer, supposedly in her briefcase, and he insinuated that she had taken the file home, N.T. IV at 110–14; he hollered at her and questioned her about the propriety of a W–4 tax form that she had completed, N.T. IV at 117–18; after she requested a transfer out of AID, he remarked: "You women don't know what you want. Why don't you stay in one place like a man? . . . .", N.T. IV at 120; he did not conduct any investigation into case folders that she reported to her sergeant and or lieutenant as missing, N.T. IV at 124–27; and he hollered at and

threatened to bring disciplinary charges against her for being present in a room in which several officers were viewing video tapes that might be considered pornographic on a VCR television at AID and then submitting what Liciardello found to be an incomplete memorandum to him on the matter, N.T. IV at 145.

Having examined the record in the light most favorable to plaintiff Conn, the court finds as a matter of law that the actions of Liciardello do not rise to the level of outrageousness required under Pennsylvania law. As with the incidents involving Kelsey–Andrews, Liciardello could have been more understanding and tactful in his dealings with Conn. Nevertheless, the court concludes that the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief to Conn on her claim of intentional infliction of emotional distress against Liciardello.

### V. *Summary*

As a result of the actions taken by the court as explained above, plaintiffs have verdicts against defendants Liciardello and Doyle on their § 1983 claims, but no longer have verdicts on their intentional infliction of emotional distress claims against these defendants. The problem that then arises is that court is unable to simply reduce the compensatory damages awarded to take into account the "dismissal" of the intentional infliction claims, because the jury interrogatories did not include a breakdown of the compensatory damages figure as between the § 1983 and intentional infliction claims against Liciardello and Doyle, but rather provided only for assessment of a total dollar amount against each defendant.[9] *See* Appendix. Thus, in an attempt to resolve this issue, the court will schedule a conference with the parties for purposes of settlement.

An appropriate order follows.

---

9. The parties were given an opportunity to object to the interrogatory form prior to the court's charge to the jury. Neither party objected to the form of the compensatory damage question. N.T. VIII (afternoon) at 36–39.

## APPENDIX

### Jury Interrogatories (Summarized)

1. Do you find that the defendants intentionally or recklessly violated plaintiffs' rights to equal protection?

| | Kelsey–Andrews | Conn |
|---|---|---|
| Defendant City of Philadelphia | yes | yes |
| Defendant Kevin Tucker | no | no |
| Defendant Joseph Liciardello | yes | yes |
| Defendant Frank Doyle | yes | no |

2. Do you find that the defendants intentionally or recklessly caused plaintiff to suffer severe emotional distress?

| | Kelsey–Andrews | Conn |
|---|---|---|
| Defendant Joseph Liciardello | yes | yes |
| Defendant Frank Doyle | yes | no |

3. State the amount of compensatory damages, if any, you award to plaintiff, as against:

| | Kelsey–Andrews | Conn |
|---|---|---|
| Defendant City of Philadelphia | $130,000 | $100,000 |
| Defendant Kevin Tucker | 0 | 0 |
| Defendant Joseph Liciardello | 65,000 | 35,000 |
| Defendant Frank Doyle | 65,000 | 0 |

4. State the amount of punitive damages, if any, you award to plaintiff, as against:

| | Kelsey–Andrews | Conn |
|---|---|---|
| Defendant Kevin Tucker | 0 | 0 |
| Defendant Joseph Liciardello | 0 | 0 |
| Defendant Frank Doyle | 0 | 0 |

---

### ORDER

AND NOW, this 16th day of February, 1989, upon consideration of the various motions and the responses thereto, it is hereby Ordered as follows:

1. Plaintiffs' motion to alter or amend judgment on the Title VII claim (docket entry no. 94) is DENIED.

2. Defendants' motion for judgment notwithstanding the verdict and remittitur (docket entry no. 96) is GRANTED IN PART, DENIED IN PART, and HELD IN ABEYANCE IN PART, as follows:

a. The motion is GRANTED and judgment notwithstanding the verdict is entered in favor of defendant City of Philadelphia and against both plaintiffs on the § 1983 claims.

b. The motion is GRANTED and judgment notwithstanding the verdict is entered in favor of defendants Joseph Liciardello and Frank Doyle and against both plaintiffs on the intentional infliction of emotional distress claims.

c. In accordance with paragraphs 2.a. and 2.b. above, the Civil Judgment entered on December 20, 1988 (docket entry no. 92) is hereby MODIFIED (in its entirety) and Judgment is ENTERED as follows: Judgment is hereby entered in favor of Plaintiff Priscilla Kelsey–Andrews and against Defendant Joseph Liciardello in the amount of SIXTY–FIVE THOUSAND ($65,000) DOLLARS; in favor of Plaintiff Priscilla Kelsey–Andrews and against Defendant Frank Doyle in the amount of SIXTY–FIVE THOUSAND ($65,000) DOLLARS; in favor of Plaintiff Debra Conn and against Defendant Joseph Liciardello in the amount of THIRTY–FIVE THOUSAND ($35,000) DOLLARS; in favor of Defendant Kevin Tucker and against Plaintiffs Priscilla Kelsey–Andrews and Debra Conn; and in favor of Defendant City of Philadelphia and

against Plaintiffs Priscilla Kelsey–Andrews and Debra Conn.

d. The motion for remittitur is HELD IN ABEYANCE pending a conference to be held in this matter.

e. In all other respects, the motion is DENIED.

3. Defendants' motion to alter or amend judgment against City of Philadelphia (docket entry no. 97) is DISMISSED as moot in light of paragraph 2.a. above.

4. Plaintiffs' motion for attorneys' fees (docket entry no. 93) and Supplemental Application are HELD IN ABEYANCE pending a conference to be held in this matter.

AND IT IS SO ORDERED.