John DOE, Esquire

v.

KOHN NAST & GRAF, P.C. d/b/a Kohn Klein Nast & Graf, P.C., Kohn Savett Klein & Graf, P.C. and Steven A. Asher.

No. 93–4510.

United States District Court, E.D. Pennsylvania.

May 13, 1994.

Alan B. Epstein, Jablon, Epstein and Wolf, John Doe, Philadelphia, PA, for plaintiff.

Barbara A. O'Connell, Sweeney, Sheehan & Spencer, Philadelphia, PA, for defendants.

Carmen R. Matos, E.E.O.C., Philadelphia, PA, for intervenor-plaintiff E.E.O.C.

Ronald P. Schiller, Piper & Marbury, Philadelphia, PA, Madeleine Schachter, CBS, Inc., New York City, for Non–Party CBS, Inc.

Carl A. Solano, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Non–Parties Nat. Broadcasting Co., Inc. and Capital Cities/ABC, Inc.

### MEMORANDUM

BARTLE, District Judge.

Plaintiff, an attorney, brought this action under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. against the law firm of Kohn, Nast & Graf, where he was formerly employed as an associate, and against one of its partners, Steven Asher. Plaintiff alleges that in December of 1992, the firm fired him because he was infected with the Human Immunodeficiency Virus ("HIV"). He also has various state claims for relief.

Before the court[1] are the motions of defendants to compel non-parties National

---

1. This case has been reassigned from The Honor- able Robert S. Gawthrop, III to the undersigned

Broadcasting Company ("NBC"), American Broadcasting Company ("ABC") and Columbia Broadcasting System, Inc. ("CBS") to produce, in discovery, unbroadcast portions of videotaped interviews with plaintiff.[2]

In January, 1994, plaintiff gave several hours of videotaped interviews to NBC concerning the underlying lawsuit. NBC broadcast several minutes of the interviews on its NOW program on January 19, 1994. In February, 1994, ABC News interviewed plaintiff. A portion of that exchange was televised on February 20, 1994. Although it has not been aired, plaintiff also gave an interview to CBS sometime in late February, 1994.

Plaintiff was deposed for five days in March, 1994. According to defendants, he made statements at his deposition which are materially inconsistent with statements made during the broadcast portions of the NBC and ABC interviews.

The broadcast segments have been produced in discovery. Defendants, however, served subpoenas on NBC, ABC and CBS for the complete interviews of plaintiff. Defendants contend that the tapes will provide admissions by plaintiff[3] as well as impeachment material. All three networks have objected to the production. They assert that a journalist's privilege arising under federal common law and the First Amendment to the Constitution protects the unbroadcast portions of the interviews commonly known as "outtakes."[4]

The First Amendment provides that "Congress shall make no law ... abridging the freedom ... of the press ..." The free press clause was designed to "preserve an untrammeled press as a vital source of public information." *Grosjean v. American Press Co.*, 297 U.S. 233, 250, 56 S.Ct. 444, 449, 80 L.Ed. 660 (1936). In *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court declined to adopt a privilege for journalists to refuse to testify before a grand jury. It stated, however, that the First Amendment to the Constitution affords some protection for the process of news gathering, explaining that "without some protection for seeking out the news, freedom of the press could be eviscerated." *Id.* at 681, 92 S.Ct. at 2656.

The Court of Appeals of this Circuit has recognized a qualified privilege for journalists to protect confidential sources and other information. In *Riley v. City of Chester*, 612 F.2d 708, 714 (3d Cir.1979) the court held that journalists have a qualified federal common law privilege to protect confidential sources arising under Rule 501 of the Federal Rules of Evidence.[5] The court, relying on the *Branzburg* decision, recognized the "constitutional dimension" of the privilege. *Id.* at 715. It explained that the privilege is necessary to effectuate the "strong public policy

for the purpose of the presently pending motions only.

2. Defendants also moved to compel NBC to produce videotapes of an interview with W. Atlee Davis III, whom defendants described as plaintiff's character witness. Plaintiff indicated at oral argument that at this time he does not intend to call Mr. Davis as a witness. Consequently, defendants' motion will be denied without prejudice with regard to Mr. Davis.

3. Rule 801(d)(2) of the Federal Rules of Evidence provides that a statement is not hearsay if, "[t]he statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity ..."

4. Movants also assert that they are protected by the Pennsylvania Shield Law, 42 Pa.Cons.Stat. Ann. § 5942. However, because jurisdiction over this case is not based on diversity of citizenship the Shield Law is inapplicable. *Wm. T.*

*Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982). The presence of supplemental state causes of action does not alter the result. *Id.* Moreover, the Commonwealth's Shield Law only protects confidential sources—an issue not present here.

5. Rule 501 provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law.

which supports the unfettered communication to the public of information, comment and opinion." *Id.* In *United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981), a criminal case, the Court of Appeals extended the privilege beyond the protection of a confidential source to include the protection of a reporter's notes and other unpublished information, including unbroadcast portions of interviews. The court found that compelled disclosure of a reporter's unpublished resource materials "may substantially undercut the public policy favoring the free flow of information to the public that is the foundation for the privilege." *Id.* at 147.

█ The privilege, however, is not absolute and must be weighed against the strong interest of litigants in the full and complete disclosure of relevant evidence. *See Riley, supra* at 716. Evidentiary privileges in general are not favored because they interfere with the search for the truth. *United States v. Criden,* 633 F.2d 346, 358 (3d Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). Consequently, the court must "balance on one hand the policies which give rise to the privilege and their applicability to the facts at hand against the need for the evidence sought to be obtained in the case at hand." *Riley,* 612 F.2d at 716. Under *Cuthbertson,* in striking this balance, the court may consider, as an important factor favoring disclosure, the fact that the identity of the source of the information is not confidential. 630 F.2d at 139. On the other hand, the First Amendment interest of the press may be entitled to greater weight in a civil case than in a criminal case. *Id.* at 147; *Riley,* 612 F.2d at 716. Ultimately, the decision on whether to order production of outtakes is extremely fact specific, and the court must examine the details of each case on an ad hoc basis. *Id.* at 715.

█ In making this determination, the Court of Appeals for this Circuit has developed a three part test which movant must satisfy before production of materials covered by the reporter's qualified privilege may be compelled:

> *First,* the movant must demonstrate that he has made an effort to obtain the information from other sources. *Second,* he must demonstrate that the only access to the information sought is through the journalist and her sources. *Finally,* the movant must persuade the court that the information sought is crucial to the claim. [Emphasis added]

*United States v. Criden,* 633 F.2d at 358.

█ From the outset, it has appeared to this court that an in camera review of the tapes would be helpful, if not essential, to its analysis. The media, however, has declined the court's request voluntarily to produce the outtakes for examination. Under *Cuthbertson,* this court cannot compel the production of the tapes, even for in camera inspection, unless the moving party has satisfied certain threshold requirements. Specifically, the movant must show that the information sought is unavailable elsewhere and consists of "relevant evidentiary material." 630 F.2d at 148.[6]

Defendants contend that the information sought in this case, namely the statements of a party opponent captured on videotape, is by its very nature unavailable elsewhere and that the deposition of the plaintiff is not an adequate substitute. We agree. The Court of Appeals, in *Cuthbertson,* upheld the decision of the district court to order production for in camera review of statements in the possession of CBS made by persons on the government's witness list. The court explained that verbatim and substantially verbatim statements of witnesses which the government intended to call at trial were:

> [b]y their very nature ... not obtainable from any other source. They are unique bits of evidence that are frozen at a particular place and time.

---

6. We note that in *Cuthbertson,* the court relied on the Fed.R.Crim.P. 17(c) in formulating the test for in camera review. That rule permits a criminal defendant to subpoena documents and other materials which are admissible as evidence, including materials that may be used for impeaching a witness. 630 F.2d at 144. Although this is not a criminal case, given the nature of the qualified privilege, we see no reason to apply a different standard in a civil action.

630 F.2d at 148. The court further stated that interviews with the persons involved were not sufficient because the particular statements memorialized by the journalists "may be useful for impeachment purposes at trial." *Id.* In short, verbatim statements are unique. The only source of this information is from the videotapes themselves. Plaintiff cannot possibly be expected to remember or recite, at a later time, exactly what he said in prolonged interviews such as those involved here.

Furthermore, the interviews, which concern the allegations in the underlying lawsuit, are clearly relevant evidentiary material in this case where plaintiff's credibility will play an important role at the trial. The videotaped interviews of plaintiff, if the court orders production, could be used for impeachment purposes and would be admissible as admissions under Rule 801(d)(2)(A) of the Federal Rules of Evidence.

In conclusion, defendants have made a showing at least sufficient to enable this court to order in camera review of the outtakes under the two pronged test set out in *Cuthbertson.* We do not believe that such a review will inhibit the work of a free press, particularly since neither a confidential source nor a reporter's notes or recollections are involved. We make no decision at this time on whether the information contained on the tapes should be made available to the defendants.

The motion of defendants to compel production of tapes of plaintiff John Doe will be held in abeyance pending in camera review by the court.