Corinne E. KOTLINSKI, Plaintiff,

v.

MORTGAGE AMERICA, INC.
d/b/a Alternative Lending,
Defendant.

No. CIV. A. 97–699.

United States District Court,
W.D. Pennsylvania.

July 16, 1998.

John D. Eddy, Eddy & Osterman, Pittsburgh, PA, for plaintiff.

Frank C. Botta, Burns, White & Hickton, Pittsburgh, PA, for defendant.

## OPINION and ORDER OF COURT

AMBROSE, District Judge.

In her Complaint against Defendant, Mortgage America, Inc. d/b/a Alternative Lending ("Mortgage America"), Plaintiff, Corinne E. Kotlinski ("Kotlinski"), alleges claims against Mortgage America for violation of the Wage Payment and Collection Laws 43 Pa. Cons.Stat. § 260.1, et seq., an accounting, unjust enrichment and intentional infliction of emotional distress. These claims stem from allegations by Kotlinski that Mortgage America (1) failed to pay commissions due to Kotlinski for mortgage loans that she originated prior to voluntarily terminating her employment with Mortgage America and (2) subjected Kotlinski to mental and physical suffering by engaging in sexually offensive conduct towards her in the Mortgage America office and requiring her participation in unlawful and fraudulent mortgage lending practices.

Currently pending is Mortgage America's Motion for Summary Judgment. In its Motion for Summary Judgment, Mortgage America seeks judgment as to Kotlinski's claims in Count II (accounting) and Count IV (emotional distress/sexual harassment) of her Complaint. Regarding Count II, Mortgage America claims that Kotlinski possesses the documents needed to determine the total of the allegedly owed commissions and thus, can not claim any right to an accounting. Motion for Summary Judgment ("MSJ"), ¶¶ 53–55. In regards to Count IV, Mortgage America contends that the incidents alleged by Kotlinski to have given rise to her intentional infliction of emotional distress claim, even if true, do not constitute outrageous conduct required for a claim of intentional infliction of emotional distress and, alternatively, that Kotlinski can not prove her injury with the necessary medical evidence. MSJ, ¶¶ 41–43. After careful consideration, and for the reasons set forth below, Mortgage America's Motion for Summary Judgment is granted in part and denied in part.

### STANDARD OF REVIEW

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the non-moving party. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the non-moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the nonmoving party will bear the burden of proof at trial,

the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party satisfies this burden, the burden shifts to the non-moving party, who must go beyond its pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories, showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

## FACTS PERTINENT TO MOTION FOR SUMMARY JUDGMENT

Viewing the facts in à light most favorable to the non-moving party, here Kotlinski, the following facts are relevant to deciding Mortgage America's Motion for Summary Judgment. Mortgage America hired Kotlinski in October 1994 at the age of twenty-four (24) to work as a loan officer. Mortgage America's principal offices are located in Bay City, Michigan, and the company maintains an office in Parkway Center, Pittsburgh, Pennsylvania.

Upon being hired by Mortgage America, Kotlinski was immediately put on a commission schedule with respect to her compensation for working as a loan officer. The commission arrangement at the time of Kotlinski's hiring was that she received as her compensation fifteen percent (15%) of the loan origination fees paid by the borrower upon origination of the loan and fifteen percent (15%) of the premium received by Mortgage America upon the sale of the loan by Mortgage America to a third party investor. Thereafter, on or about November 27, 1996, Kotlinski's commission/pay structure changed and she was paid commissions on the loans she originated on a sliding scale. The way the sliding scale was structured was that an employee was paid fifteen (15%) of the front and fifteen (15%) of the back as the month progressed and then, at the end of the month, the total income would be calculated and the employee could receive an additional bonus based upon the income generated.

Kotlinski resigned from Mortgage America on December 23, 1996. Kotlinski claims that there were numerous loans that she originated prior to resigning and which subsequently were consummated and sold to investors and for which she was not paid a commission.

Kotlinski has submitted a list of account names which she claims she originated and thus is due a commission. This list, which Kotlinski developed from memory and assorted weekly "work in progress" lists, is not a complete record of the accounts which Kotlinski originated in 1996.

Regarding the emotional distress claim, Kotlinski testified at her deposition that Mortgage America condoned and, in fact, required loan officers to commit fraudulent and/or unlawful mortgage lending practices. According to Kotlinski, her continued employment depended on her engaging in the aforesaid practices. She claims Mortgage America's motto, "there is a way to make it work," evolved into a policy in which loan originators were forced to alter tax and other documents to insure sufficient applicant income.

Acts by Mortgage America that Kotlinski testified about at her deposition and which she avers were fraudulent and unlawful, included the following: (1) loan officers were instructed to remove references to children from the loan application and the tax returns of marginally qualified applicants to show more disposable income; (2) if a customer owned a house then the loan originator created lease agreements and payments to show additional income; (3) loan originators changed a part-time employee's records to falsely show full-time employment; (4) the Pittsburgh office manager, Mr. Kinsey, purchased software to assist employees in falsifying financial documents; (5) Kinsey told Kotlinski to falsify a "land contract" so that a loan would be treated as a "refinance" rather

than an "outright purchase;" (6) when an operations manager in the Bay City office noticed irregularities on tax returns, he instructed the Pittsburgh office to "correct" them to reflect more income; (7) when employment verification documents reflected different employment dates than those on the loan application, Mortgage America Vice President Tom Laport instructed the office that the W–2 forms, the income tax returns and the pay stubs be "corrected" to "correlate" with the loan application; (8) on one occasion, an underwriter from the Bay City office told Kotlinski what she needed to do to "make" a loan work, which included altering the applicant's income tax returns to reflect more income; (9) when an individual did not show sufficient income on tax returns to qualify for a loan, Kinsey told Kotlinski to alter the income tax returns to reflect more income; and (10) Laport said "if you need to, create income."

Mortgage America hired individuals without any loan experience and told them that the practice of forging documents was common in the industry. Prior to being hired by Mortgage America as a mortgage loan officer, Kotlinski, who was twenty-four (24) when she was hired, had no experience in the mortgage industry. Kotlinski was never given any formal training by Mortgage America. Kotlinski was "brainwashed" into believing that the practice of forging documents was an industry standard.

Kinsey and other Mortgage America employees engaged in sexually explicit, vulgar and offensive behavior in the Mortgage America office, some of which was intended to demean and harass Kotlinski. Such behavior included: (1) continuous comments by Kinsey that Kotlinski was a lesbian, which included writing Kotlinski's and another female employee's name on a file folder with a "+" between the names; (2) comments were made that Kotlinski had an imaginary boyfriend; (3) displays of pornographic Internet sites on the computer in the back room appeared even

after Kotlinski requested that they be turned off; (4) displays on Kinsey's office computer "which exposed certain parts of a woman's anatomy [and] pictures of Jennifer Aniston on his computer nearly naked," see Plaintiff's Deposition ("Pl. Dep."), p. 530; (5) discussions by management from Bay City of strip clubs they attended while in town; (6) obscene jokes using Kotlinski's name; (7) references to Kotlinski as a "bullseye," which Kotlinski interpreted to allude to anal intercourse; (8) references to certain of Kotlinski's medical ailments as resulting from too much sexual intercourse; (9) inquiries by Kinsey and Laport concerning Kotlinski's underwear; and (10) references to various sexual positions.

Kotlinski never filed complaints of sexual harassment with the Pennsylvania Human Relations Commission or the Equal Employment Opportunity Commission or with the company's Human Relations Department. During the relevant time period, Mortgage America had a zero-tolerance policy regarding sexual harassment and a manual that set forth the procedure for reporting sexual harassment. Kotlinski did not complain to management about the above-described conduct because she felt that little would have resulted from a complaint because Kinsey was the "golden boy" of the organization, the offensive conduct permeated the company and Human Relations knew of the atmosphere and did nothing.

Kotlinski suffers from a bladder ailment. Symptoms began in February 1996 and include severe pain, incontinence, frequency, urgency and sleeplessness. Dr. Doebler, Kotlinski's urologist, testified that he believes Kotlinski has an inflammatory bladder disease that he has tentatively diagnosed as interstitial cystitis. Kotlinski did not seek any medical or psychological attention specifically regarding emotional distress during her employment and she did not suggest a causal connection between work stress and the bladder infec-

tion to Dr. Doebler until after she initiated this lawsuit.

Kotlinski did not mention her emotional distress at the time of her resignation. Kotlinski's resignation letter states "This was not an easy decision." The letter goes on to state that Kotlinski left because there was no room for advancement and that she desired to better utilize her college degree. Kotlinski contends that the letter was forced and that all involved knew that she was leaving as a result of the fraudulent practices and the general work environment.

## ANALYSIS

### A. Count II—Accounting.

In her Complaint, Kotlinski claims that she is due both front-end and back-end commissions for accounts that she originated prior to leaving Mortgage America. She seeks these commissions through claims of unjust enrichment and violations of the Wage and Payment Law. Compl. ¶ 13, 20. Further, Kotlinski claims that Mortgage America has sole possession of the documents needed to determine the total of the commissions due, and therefore, at Count II of her Complaint, Kotlinski seeks an accounting. Compl. ¶ 16.

Mortgage America objects to Kotlinski's demand for an accounting and seeks summary judgment on Count II of Plaintiff's Complaint on the ground that there is no genuine issue of material fact concerning the amount due. Defendant's Brief in Support of its Motion for Summary Judgment ("Br. In Supp."), p. 16. In particular, Mortgage America asserts that Kotlinski testified that the only commissions she is owed are included in the list of accounts in her possession and thus, that she possesses all the necessary documents to make an independent accounting. *Id.,* citing, Pl. Dep., p. 424. After review of Kotlinski's deposition transcript, however, I find that contrary to Mortgage America's interpretation of Plaintiff's deposition testimony, Kotlinski's deposition testimony suggests that Kotlinski does not have all of the necessary information concerning the loans she originated prior to resigning. *See* Pl. Dep., p. 424.

Mortgage America also objects to an accounting because Kotlinski has yet to sign a confidentiality agreement that this Court has previously deemed necessary for release of the documents. *See* Order of the Court dated January 14, 1998 (Docket # :17). While I do not agree that Kotlinski's claim for an accounting should be dismissed because of failure to sign the confidentiality agreement, I do find that any release of documents concerning the accounting continues to be subject to the Plaintiff signing the Joint Confidentiality Statement.

Accordingly, I find that there is a genuine issue of material fact as to whether Kotlinski has in her possession all of the documentation necessary to calculate the moneys allegedly owed to her by Mortgage America and therefore, the Motion for Summary Judgment on Count II of Plaintiff's Complaint is denied.

### B. Count IV—Emotional Distress/Sexual Harassment.

Mortgage America also moves for summary judgment on Count IV of Kotlinski's Complaint. In so moving, Mortgage America first argues that to the extent that Count IV is a claim for violation of Title VII, judgment must be granted on the claim because Kotlinski failed to exhaust her administrative remedies, there is no genuine issue of material fact as to whether Mortgage America had notice that Kotlinski had been sexually harassed, and Kotlinski was not detrimentally affected by the alleged conduct.

In her response to Mortgage America's Motion for Summary Judgment, Kotlinski states that Count IV does not contain a Title VII sexual harassment claim but rather, is solely an intentional infliction of emotional distress claim. Plaintiff's Response to Defendant's Motion for Sum-

mary Judgment "Pl. Resp." ¶ 5. Accordingly, Mortgage America's motion for summary judgment as to Count IV of Kotlinski's Complaint is granted to the extent Count IV states a Title VII sexual harassment claim; henceforth, Count IV will be treated only as a state law claim for intentional infliction of emotional distress.

Mortgage America also argues that summary judgment should be granted as to Kotlinski's claim for intentional infliction of emotional distress because the conduct alleged by Kotlinski, even if true, does not rise to the level of outrageousness that is required in the employment context and, even if the conduct alleged did reach the necessary level, Kotlinski has failed to establish via expert testimony that she actually suffered emotional distress as a result of Mortgage America's conduct.

Kotlinski bases her intentional infliction of emotional distress claim upon allegations of sexually offensive conduct committed towards her by Mortgage America employees and forced participation in fraudulent and unlawful mortgage lending practices. Pl. Resp., ¶ 4. Specifically, Plaintiff's intentional infliction of emotion distress claim is based upon the following: (1) loan officers were instructed to remove references to children from the loan application and the tax returns of marginally qualified applicants to show more disposable income; (2) if a customer owned a house then the loan originator created lease agreements and payments to show additional income; (3) loan originators changed a part-time employee's records to falsely show full-time employment; (4) the Pittsburgh office manager, Mr. Kinsey, purchased software to assist employees in falsifying financial documents; (5) Kinsey told Kotlinski to falsify a "land contract" so that a loan would be treated as a "refinance" rather than an "outright purchase;" (6) when an operations manager in the Bay City office noticed irregularities on tax returns, he instructed the Pittsburgh office to "correct" them to reflect more income; (7) when employment verification documents reflected different employment dates than those on the loan application, Mortgage America Vice President Tom Laport instructed the office that the W–2 forms, the income tax returns and the pay stubs be "corrected" to "correlate" with the loan application; (8) on one occasion, an underwriter from the Bay City office told Kotlinski what she needed to do to "make" a loan work, which included altering the applicant's income tax returns to reflect more income; (9) Laport said "if you need to, create income;" (10) when an individual did not show sufficient income on tax returns to qualify for a loan, Kinsey· told Kotlinski to alter the income tax returns to reflect more income; (11) Mortgage America hired individuals without any loan experience and told them that the practice of forging documents was common in the industry; (12) prior to being hired by Mortgage America as a mortgage loan officer, Kotlinski, who was twenty-four (24) when she was hired, had no experience in the mortgage industry; (13) Kotlinski was never given any formal training by Mortgage America; (14) Kotlinski was "brainwashed" into believing that the practice of forging documents was an industry standard; (15) continuous comments by Kinsey that Kotlinski was a lesbian, which included writing Kotlinski's and another female employee's name on a file folder with a " + " between the names; (16) comments were made that Kotlinski had an imaginary boyfriend; (17) displays of pornographic Internet sites on the computer in the back room appeared even after Kotlinski requested that they be turned off; (18) displays on Kinsey's office computer "which exposed certain parts of a woman's anatomy [and] pictures of Jennifer Aniston on his computer nearly naked," *see* Plaintiff's Deposition ("Pl. Dep."), p. 530; (19) discussions by management from Bay City strip clubs they attended while in town; (20) obscene jokes using Kotlinski's name; (21) references to Kotlinski as a "bullseye," which Kotlinski interpreted to allude to anal intercourse; (22) references to certain of Kotlinski's

medical ailments as resulting from too much sexual intercourse; (23) inquiries by Kinsey and Laport concerning Kotlinski's underwear; and (24) references to various sexual positions.

The tort of intentional infliction of emotional distress occurs when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." RESTATEMENT (SECOND) OF TORTS § 46(1) (1965). This tort is not a matter governed by federal law or the Constitution, and thus, in reviewing Kotlinski's intentional infliction of emotional distress claim, this Court must apply the laws of Pennsylvania. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The Pennsylvania Supreme Court has not explicitly adopted the tort of intentional infliction of emotional distress as defined in RESTATEMENT (SECOND) OF TORTS § 46. Courts interpreting Pennsylvania law nevertheless have imposed liability for the tort in appropriate cases. *See, for example, Williams v. Guzzardi*, 875 F.2d 46, 51(3d Cir.1989), *citing, Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979). *See also Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988).

■ To prove an intentional infliction of emotional distress claim, a plaintiff must show the following:

1. the conduct must be extreme and outrageous;

2. it must be intentional or reckless;

3. it must cause emotional distress;

4. that distress must be severe.

*Hoy v. Angelone*, 456 Pa.Super. 596, 610, 691 A.2d 476, 482 (1997), *appeal granted*, 549 Pa. 701, 700 A.2d 441 (1997), *quoting, Hooten v. Penna. College of Optometry*, 601 F.Supp. 1151, 1155 (E.D.Pa.1984). "It is the court's responsibility to determine if the conduct alleged in a cause of action reaches the requisite level of outrageousness." *Andrews v. City of Philadelphia*,

895 F.2d 1469, 1487 (3d Cir.1990). Significantly,

> [l]iability has been found only where the conduct has been so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and ultimately intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous".

Restatement (Second) of Torts § 46, comment d (1965).

Courts applying Pennsylvania law have reserved the tort for the most extreme cases. *See, for example, Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (court held that withholding and concealing child's body from parents for two months constituted intentional infliction of emotional distress); *Chuy v. Philadelphia Eagles Football Club*, 431 F.Supp. 254 (E.D.Pa.1977) (court held that intentional infliction of emotional distress resulted when team physician told national news media that plaintiff, a professional football player, suffered from a possibly fatal rare blood disease when the physician knew his statement was untrue).

Significant for this case, the United States Court of Appeals for the Third Circuit has noted that "it is rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir.1990), *quoting, Cox v. Keystone Carbon, Co.*, 861 F.2d 390, 395 (3d Cir.1988). In fact, "the only instances where courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." *Smith v. Pathmark Stores, Inc.*, 1998 WL 309916 at *8

(E.D.Pa. June 11, 1998), *quoting, Cox v. Keystone Carbon Co.,* 861 F.2d 390, (3d Cir.1988). *See also Barb v. Miles, Inc.,* 861 F.Supp. 356, 360 (W.D.Pa.1994), (court denied summary judgment where defendant had made suggestive innuendoes, inappropriately touched her and when rejected by plaintiff "altered the terms and conditions of her employment"). Notably, Kotlinski does not present a claim for retaliation.

Courts applying Pennsylvania law have failed to find liability for intentional infliction of emotional distress for less severe conduct. *See, for example, Cox v. Keystone Carbon Co.,* 861 F.2d 390 (3d Cir. 1988) (no tort when employer fired employee on the day he returned from triple bypass surgery); *Doe v. Kohn Nast & Graf, P.C.,* 853 F.Supp. 147 (E.D.Pa.1994) (no tort where HIV infected employee was dismissed, employer defamed employee to establish pretext for dismissal and threatened to forcibly remove employee from premises); *James v. International Business Machines Corp,* 737 F.Supp. 1420 (E.D.Pa.1990), (tort not established after two years of relentless joking and harassing including being called "bitch"); *Snyder v. Specialty Glass Products, Inc.,* 441 Pa.Super. 613, 658 A.2d 366 (1995) (no liability when employee suffered verbal abuse and demotion to entry-level position when he came in late after providing emergency medical treatment on the way to work). The RESTATEMENT explains:

> "[t]he liability does not extend to mere insults, indignities, threats, oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to the occasional acts that are definitely inconsiderate and unkind."

RESTATEMENT (SECOND) OF TORTS § 46 comment d (1965).

■ Applying the above stated law to the facts of the case *sub judice,* and assuming that the tort of intentional infliction of emotional distress exists under Pennsylvania law, I find that although Kotlinski's claims, if true, certainly establish a deeply unpleasant workplace, Kotlinski has not come forward with evidence sufficient to state a claim for intentional infliction of emotional distress in that Mortgage America's conduct does not rise to the level of being "extreme and outrageous." In other words, even viewing the evidence in a light most favorable to Kotlinski, Mortgage America's conduct towards Plaintiff was not "so extreme in degree to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." RESTATEMENT (SECOND) OF TORTS § 46 comment d. Accordingly, Mortgage America's Motion for Summary Judgment on Count IV of Kotlinski's Complaint, to the extent said count contains a claim for intentional inflict of emotional distress, is granted.[1]

C. Count I—Violation of Wage, Payment and Collection Law—and Count III—Unjust Enrichment.

In its Reply Brief in Support of its Motion for Summary Judgment, Mortgage America also argues for summary judgment as to Kotlinski's claims for violation of the Wage Payment and Collection Law, 43 Pa. Cons.Stat. Ann. § 260.1 et seq., (Count I of the Complaint) and unjust enrichment (Count III of the Complaint) on the grounds that Kotlinski bases her

---

1. The Pennsylvania Supreme Court has stated that "if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 197, 527 A.2d 988, 995 (1987). In that I have found that Mortgage America's conduct towards Kotlinski did not rise to the level of outrageousness sufficient to provide a basis for recovery for the tort of intentional infliction of emotional distress, it was not necessary to address Mortgage America's alternative argument that Kotlinski lacked the medical evidence necessary to establish that she suffered emotional distress.

wage and unjust enrichment claims upon an alleged "oral contract of employment" and that under Pennsylvania law, the plaintiff has the burden of establishing the existence of an oral contract by "clear and precise" evidence, and counsel for Kotlinski admitted at her deposition that Kotlinski was an at-will employee, and therefore, "being that Plaintiff was an at-will employee, there is no issue of material fact as to whether she had an 'oral contract of employment' upon which the commissions she claims to be owed are due." Defendant's Reply Brief in Support of its Motion for Summary Judgment, p. 7. The basis for Mortgage America's argument apparently is the statement in Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment wherein Plaintiff stated "Plaintiff brought this action against her former employer for an alleged breach of an oral contract of employment for unpaid commissions, and for the intentional infliction of emotional distress. The Complaint also contains a claim for an accounting of the unpaid commissions and an alternative claim for payment of said commissions under a theory of unjust enrichment." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition Brief"), p. 1.

In substantively responding to Mortgage America's request for summary judgment on Counts I and III of her Complaint,[2] Kotlinski first argues that with respect to Count I of her Complaint, there was an oral contract of employment between Kotlinski and Mortgage America based upon promises made by Kinsey that Mortgage America would pay Kotlinski for her services as a loan officer, such that even though Kotlinski was an at-will employee, she was entitled to be paid for the services she rendered to Mortgage America. Plaintiff's Sur–Reply Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Sur–Reply Brief"), p. 2, citing, Kinsey depo., pp. 12–13 and 32–33.

Further, Kotlinski contends that there was an implied contract of employment based upon the conduct of the parties. *Id.* Finally, with respect to her claim in Count I, Kotlinski also argues that it does not matter whether said contract between the parties was implied or oral in that because her claim arises under the Pennsylvania Wage Payment and Collection Law, "all that matters is that plaintiff has made a claim for unpaid 'wages' under said statute, which expressly includes 'commissions.'" *Id.* at p. 3, *quoting,* 43 P.S. § 2609.2a.

With respect to Mortgage America's request for summary judgment as to Count III of Kotlinski's Complaint, which contains Kotlinski's claim for unjust enrichment, Kotlinski responds that summary judgment cannot be granted because the doctrine of unjust enrichment "allows recovery based on the equitable principle that 'a person who has been unjustly enriched at the expense of another may be required to make restitution to the other'" and does not require privity of contract in order to sustain an unjust enrichment claim "because the law implies a promise to pay." *Id., quoting,* Restatement, Restitution, § 1; *citing, Zurich General Accident v. Klein,* 181 Pa.Super. 48, 121 A.2d 893 (1956).

Thus, with respect to her claims at Count I and Count III of her Complaint, Kotlinski concludes: "even though an 'at-will' employee can be discharged from, or can voluntarily terminate, his or her employment at any time without cause, the employer still has a contractual or quasi-contractual obligation to pay compensation earned by the employee up to the date of termination." *Id.* at pp. 4–5.

While I do not ordinarily review arguments for summary judgment not set forth in the original motion for summary judgment, given that Kotlinski has stated her opposition to Mortgage America's argu-

**2.** Kotlinski also contends, from a procedural point of view, that "[s]ince these matters are not raised in the Motion itself, they should not now be considered for the first time in defendant's Reply Brief." Plaintiff's Sur–Reply Brief, p. 1.

ments as to Count I and III and provided substantive analysis for why Mortgage America's arguments as to Count I and III should be disregarded, I will address the merits of the parties' arguments as to the viability of Counts I and III of Kotlinski's Complaint.

First, with respect to Mortgage America's request for summary judgment as to Plaintiff's unjust enrichment claim on the basis that Kotlinski bases her unjust enrichment claim on an alleged oral contract of employment, I disagree with Mortgage America's interpretation of Count III of Plaintiff's Complaint. As I read Kotlinski's Complaint, Opposition Brief and Sur–Reply Brief, she is not basing her unjust enrichment claim on any alleged rights under an oral contract of employment with Mortgage America. *See, for example,* Plaintiff's Opposition Brief, p. 1 ("Plaintiff brought this action against her former employer for an alleged breach of an oral contract of employment for unpaid commissions ... The Complaint also contains ... an alternative claim for payment of said commissions under a theory of unjust enrichment."). Accordingly, Mortgage America's request for summary judgment on Count III of Plaintiff's Complaint is denied.

■ With respect to Mortgage America's request for summary judgment on Count I of Kotlinski's Complaint, I find that there is a genuine issue of material fact as to whether there was an oral employment agreement between Mortgage America and Kotlinski to the extent that Mortgage America agreed to pay Kotlinski commissions in exchange for her working for them as a loan officer. Moreover, in so finding, I conclude that such a finding is not inconsistent with Kotlinski's status as an at-will employee for Mortgage America, a legal status which addresses the ability of Mortgage America and Kotlinski to terminate the employment relationship between the parties but does not address issues of compensation for work completed prior to an employee's termination. *See*

*Martin v. Safeguard Scientifics, Inc.,* 17 F.Supp.2d 357, 368 (1998). Accordingly, Mortgage America's request for summary judgment on Count I of Kotlinski's Complaint is denied.

### ORDER OF COURT

**AND NOW,** this **23RD** of October, 1998, the parties to the above-captioned action have reached an amicable settlement of their respective claims and stipulate that the action may be dismissed with prejudice.

It is, accordingly, **ORDERED** that the above-captioned action is hereby **DISMISSED** *with prejudice* pursuant to Fed.R. Civ.P.41(a)(2).